29532. MASTER LOAN SERVICE INC. *v.* MADDOX.

DECIDED DECEMBER 2, 1942.

*George F. Fielding, Robert T. Efurd,* for plaintiff.
*James C. Howard Jr.,* for defendant.

BROYLES, C. J. The Master Loan Service Inc. (herein referred to as plaintiff) instituted bail-trover proceedings in the civil court of Fulton County against N. E. Maddox, doing business as Terminal Used Car Exchange (herein called defendant). The trover petition alleged that the defendant was in possession of "1 Ford coach, motor No. 18-2424528, being the same automobile conveyed to plaintiff by bill of sale executed by Clyde Odom, recorded in office of clerk of Fulton superior court, of the value of $140, to which plaintiff claims title or a valuable interest therein." The judge, acting without the intervention of a jury, rendered a judgment for the defendant. The plaintiff's motion for new trial was overruled, and on appeal the appellate division of the court affirmed that judgment. To this judgment of affirmance the plaintiff excepted.

The record discloses that, on April 5, 1938, Clyde Odom and Mrs. Sis Odom executed a bill of sale conveying to the plaintiff, besides other personal property, "1 Ford coach, motor No. 1802-424528 . . being in our possession at 766 Jefferson St., N. W., in the City of Atlanta, said State and county." This bill of sale was given to secure the payment of $300, payable in thirty equal

monthly installments of $10 each, "on the 5th day of each month hereafter." It was executed in Fulton County, Georgia, and duly recorded in said county on April 8, 1938. On February 10, 1940, Clyde Odom executed to plaintiff a bill of sale to secure the payment of $140, payable in twenty-eight monthly installments of $5 each, "on the 10th day of each month hereafter." Besides the other personal property described in the first bill of sale, this instrument conveyed "1 Ford coach, motor 18-2424528 . . being in our possession at 1064 Kirkwood Ave., S. E., in the City of Atlanta, said State and county." This bill of sale was headed "Georgia, Fulton County," and was duly recorded in said county on March 15, 1940. In regard to this last instrument, R. L. Gore, sworn as a witness for the plaintiff, testified: "The purpose . . in taking this second bill of sale was reducing the payment on his [Odom's] account. . . This bill of sale shows $140. He was due the company that much at the time this second bill of sale was taken. As to whether it was an extension, it was purely and simply to reduce his payments after he said he was not able to carry the size of the payments of the former account." According to the great preponderance of the evidence Clyde Odom, on or about February 9, 1939, traded to the defendant the automobile conveyed by the first bill of sale to the plaintiff.

James L. Vaughan, an appraiser for the plaintiff, testified in part: "The motor number appears on that bill of sale. The motor number on there is 2424528. As to why I left this 180 off of the front of it, that 180 has nothing to do with the motor number of the car. . . As to whether our instrument shows the motor number as being 1802424528, probably it does, but the motor number of the car is 2424528." A. H. Tuck, sworn as a witness for the plaintiff, testified in part as follows: "I am employed by Ernest G. Beaudry. . . I am familiar with an automobile transaction pertaining to a Ford two-door automobile, motor number 2424528. . . We got that automobile from the Terminal Used Car Exchange [N. E. Maddox]. . . The motor number of the car that my records show was taken in was 2424528. Looking at the description of the automobile in the bill of sale which you show me, I could not testify that that is the same automobile, because the motor number of this car shown in here is 1802424528. However, there is no such motor number as that on the Ford au-

tomobile. As to what the 180 on there indicates, 18 would indicate the model number of the automobile. I deal in Ford cars almost exclusively. . . The correct motor number on that particular car would be 18-2424528. There is no such motor number as 1802424528 on a Ford automobile. They have not got that high."

N. E. Maddox, called by the plaintiff for cross-examination, testified in part as follows: "I was engaged in the used car business in February, 1939. I had some dealings with Clyde Odom. . . I have the motor number on the car that I took from Clyde Odom. The motor number is 2624528. That is the one I . . traded to Beaudry. The motor number was 2624528. It was not 2424528. I don't know how many cars Clyde Odom had at that time. That is the only one I know of. I trade a good deal with him. . . I traded the car I got from him to Beaudry Motor Company for a new car. . . I did not know that the Master Loan Service had a bill of sale or something on this automobile. I did not send some one down to the clerk's office to examine the records . . of these transactions, but Mr. Howard, I think, went down after you all claimed that you had a loan on it. : . I did not have just the one transaction with Odom. I think I have sold him three or four cars. . . I don't know whether I handled this car here, the C. T. Layton transaction, with that motor 2424528 or not. . . Terminal Used Car Exchange is a trade-name under which I do business individually."

R. L. Gore testified in part as follows: "I am employed by the Master Loan Service in the capacity of manager. I know Clyde Odom. I am familiar with the transactions he had with the company. . . I know he had two. . . I handled the transaction evidenced by the bill of sale . . dated April 5, 1938. He borrowed $300 at that time. . . Subsequent to the taking of that bill of sale, without cancelling that bill of sale, we took another bill dated February 10, 1940. The purpose . . in taking that second bill of sale was reducing the payment on his account. . . The bill of sale shows $140. . . I do not know what happened to that automobile. . ." N. E. Maddox, recalled by the plaintiff for further cross-examination, testified in part as follows: "I have had a good deal of dealings with Ford cars. As to what that 18 in front of the motor number on a Ford car means, well,

that is the model, that is all. As to whether that is the motor number, well, it is supposed to be in there. That is what they put it in there for. It is 18-. The controlling numbers are those beyond the dash. . . That 18 is the model and then the other numbers are the motor number. I am familiar with that. Disregarding the 18, which I say is the model number, as to what the motor number would be—most of them have got seven figures . . not counting the 18. . . As to whether that has got seven figures irrespective of the first ones—that has got ten there. [Apparently referring to the figures 1802424528 found in the first bill of sale]. The motor number on that would be 2424528. As to whether that has seven numbers—I have got 2624528. That is the only 1936 Ford I remember getting from Odom. I don't recall whether I examined the records to see if there was anything against this car when I took it from Odom or not. I don't usually do it. I had been selling him cars for ten years and I had never had nothing to go bad like this before. . . So far as the record showing, there could have still been a 18- in front of this 18024 and the rest of those numbers. . . I did not know anything about any loan or anything being against it. . ."

The attorneys for both parties argue the case in their briefs on the theory that the controlling question is one of constructive notice. While we have not set out all of the evidence in the case we think enough of it has been stated to illustrate the main issue involved. The headnote of *Pinson-Brunson Motor Co.* v. *Bank of Danielsville,* 40 *Ga. App.* 793 (151 S. E. 549), reads as follows: "In a contest for the proceeds of the sale of a motor-truck upon which the claimants held conflicting mortgages, one having been executed on March 19 and recorded on March 20, 1928, in which the property was described as 'one certain one-ton Chevrolet truck with stake body and closed cab Motor No. 39154,' which description was incorrect as to the motor number, the correct number being 3522589, and the other, or subsequent, mortgage having been executed on June 8, and recorded on June 11, 1928, in which there was complete and accurate description of the property, and where the evidence failed to show anything as to whether the mortgagor had only the one truck at the time of executing the first mortgage, the evidence did not demand a finding that, despite the error in description, the record of the first mortgage was sufficient to charge

a subsequent mortgagee with notice of that lien; and there being no evidence of actual notice, it was error to direct a verdict in favor of the first mortgagee." In the opinion this court said: "Even though the truck described in each instrument was one and the same vehicle, the question, under the record, is whether the description as given in the mortgage to the bank, though materially incorrect as to the motor number, was sufficient, as a matter of law, to impart notice to a subsequent purchaser or mortgagee. Whether the record might have been sufficient for this purpose as a matter of fact, we think it was not so as a matter of law, and are therefore of the opinion that the court erred in directing the verdict in favor of the bank. In plain cases the question of whether the description in a mortgage is so accurate and complete that the record will impart notice is one of law for the court, but, as was said by the Supreme Court in *Farkas* v. *Duncan*, 94 *Ga.* 27, 30 (20 S. E. 267), 'In cases of doubt, the matter should be left to the jury for determination in the light of all the facts and circumstances.' The motor number of the same make and model is perhaps the most important element in the description of motor cars, and the incorrectness of the number stated in the mortgage held by the bank was so misleading as to have authorized a finding in favor of the motor company on the question of notice, in view of the general language used in the other parts of the description." On page 798 of the same opinion the court said: "A description which is partially untrue does not render the mortgage void, if the part which is correct does not apply generally to other like property and reasonably identifies the property in controversy; but where the part of the description that is true is not so distinctive as reasonably to identify the property mortgaged, a purchaser may be justified in assuming that the property is not covered by the mortgage. Jones on Chattel Mortgages (5th ed), 109, § 63, and cit."

The second headnote in *Shearer* v. *Housch*, 32 *Ga. App.* 663 (124 S. E. 356), reads as follows: "In a suit in trover for the alleged conversion of 'one Hanson Six Touring Car, Motor No. 7W 8225, Serial No. 1504,' to which the plaintiff claimed title under a retention-of-title contract of sale, where the evidence showed that the car converted was in fact the car sued for, being the car bought by the defendant from the plaintiff's vendee, but was one Hanson Six Touring car, Motor No. 82225 (not 7W 8225), and

serial No. 1504, the record of the contract did not constitute constructive notice to the defendant of the plaintiff's retained title in the car; and there being no evidence otherwise that the defendant had notice of the plaintiff's title, the direction of a verdict for the defendant was not error." It has been said that "The words of description in a mortgage may be sufficient to create a lien on the property, and yet insufficient of themselves to impart notice . . of the lien which they create." *Nussbaum* v. *Waterman*, 9 *Ga. App.* 56 (3) (70 S. E. 259); *Reynolds* v. *Tifton Guano Co.*, 20 *Ga. App.* 49, 51 (92 S. E. 389).

In the instant case the distinctive part of the description of the automobile was its motor number. The bill of sale of April 5, 1938, the record of which was relied on to put innocent purchasers on constructive notice of the plaintiff's claim of title to the automobile in question, gives the motor number of the car as 1802424-528, whereas the correct motor number was 2424528, the 18 preceding that number being the model number. In this situation, we can not say that the court, in passing upon the case without the intervention of a jury, erred in concluding that the most distinctive part of the description of the automobile in question was the motor number, given as 1802424528, and that the description was insufficient to put the defendant upon constructive notice that an automobile described as having a motor numbered "18-2424-528" was the same automobile described in the bill of sale as bearing the motor number 1802424528.

In an interesting and instructive discussion of the requisite particularity of description of personal property in mortgages to bind subsequent innocent mortgagees with constructive notice, the Supreme Court, in *Thomas Furniture Co.* v. *T. & C. Furniture Co.*, 120 *Ga.* 879, 881 (48 S. E. 333), said, "There are some forms of personal property which it is possible to describe by marks, numbers, or other terms." The "Ford coach" involved in the instant case is easily distinguishable from all other Ford coaches and all other automobiles by its motor number, and belongs to that class of personal property mentioned in the *Thomas Furniture Co.* case, supra, and not to that class of personalty where "it is impossible for a stranger, merely from an examination of the mortgage, to determine whether a particular article is the one therein mentioned or not." The facts of the *Thomas Furniture Co.* case

clearly bring it within the latter class of cases mentioned therein. The case of *Smith* v. *Simmons, 35 Ga. App.* 427 (133 S. E. 312), the second headnote of which was cited in behalf of the plaintiff in error, where the property involved was described in the retention-of-title contract as "17 head of mules, the same being purchased from the said H. L. Jenkins estate," is based directly on the *Thomas Furniture Co.* case, supra, and obviously belongs to the same class of cases. The only other case cited in behalf of the plaintiff in error is *Rountree* v. *Chrisman & Co., 20 Ga. App.* 815 (93 S. E. 511). A casual reading of that case will show that the mortgage there involved described the mule with sufficient particularity.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*